## TUTTLE v. JEFFERSON POWER & IMPROVEMENT CO.

No. 1481.   Opinion Filed March 12, 1912.

Rehearing Denied April 23, 1912.

(122 Pac. 1102.)

**EMINENT DOMAIN**—Public Use—Distribution of Electricity.   The generating, storing, and distribution of electricity for the use of all who may have need of it, upon equal and reasonable terms, is a public use, so as to justify an exercise of the power of eminent domain conferred by section 3 of an act approved May 20, 1908 (Sess. Laws 1907-08, p. 261).

(Syllabus by the Court.)

*Error from District Court, Grant County;*
*W. M. Bowles, Judge.*

Action by the Jefferson Power & Improvement Company against J. L. Tuttle.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*Harris & Harris* and *A. C. Glenn,* for plaintiff in error.

*Emery H. Breeden,* for defendant in error.

TURNER, C. J.   On November 16, 1909, Jefferson Power & Improvement Company, a corporation, filed its amended petition in the district court of Grant county, which, after alleging its corporate existence under the laws of the state, that its main office was at Jefferson, Okla., and that it was organized for the purpose of erecting, maintaining, and operating a water power plant in Grant county, with which to manufacture electricity and furnish the same to users thereof for light, power, heat, and other purposes, further substantially states that both Salt Fork river and Pond creek run through said county, and are non-navigable streams; the defendants Mont Mayse and J. L. Tuttle are each the owner of a portion of a certain strip of land (describing it) lying between the waters of those streams, which were a short distance apart, upon which "plaintiff desires and intends to

construct, maintain, and operate the necessary dams, drains, flumes, conduits, flood gates, buildings, and equipments, for the purpose of conducting water from said Salt Fork river into said Pond creek, and there store the same, for the purpose of running and operating the machinery required" to successfully operate a power plant for generating electricity for heat, lighting, and power and furnishing same to consumers generally for hire, but over which said land it says "defendants refuse to grant the right of way." Plaintiff prays that said land be condemned under the right of eminent domain, etc., and that it be granted the right to use and appropriate said lands for the purpose aforesaid. Plaintiff, being organized under the laws of this state, invokes the benefit conferred by an act approved May 20, 1908. Section 3 thereof (Sess. Laws 1907-08, p. 261) reads:

"Any water power company, organized under the laws of this state, shall have power to exercise the right of eminent domain in like manner as railroad companies, for the purpose of securing sites for the erection of water power plants, together with the necessary dams over any nonnavigable stream, and sites for the storage of water, and of securing rights of way for the necessary flumes and conduits for the purpose of conducting water for public or private consumption, and generating power, and for the purpose of securing rights of way for poles, wire and cables for transferring and transmitting electricity generated by water."

The only question raised by the action of the court in overruling the separate demurrer of Tuttle to the petition is whether the furnishing of electricity to the public for light, heat, and power, or such members thereof as may desire to purchase the current for any or all said purposes, is a public use, for which the power of eminent domain may be invoked. If not, said statute is contrary to our own and the fourteenth amendment of the federal Constitution; otherwise not. While the Legislature is the sole judge of the necessity or expediency of the appropriation of private property to public use, when the use to which that property is to be appropriated is a public use, the determination of the character of the proposed use, as to whether the same

is or is not a public use, is a judicial question which we will now decide.  Const., art. 2, sec. 24.

Cooley's Const. Limitations (6th Ed.) p. 655, says:

"That only can be considered  *  *  *  [a public use] where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience, or welfare which, on account of their peculiar character and the difficulty, perhaps, impossibility, of making provision for them otherwise, is alike proper, useful, and needful for the government to provide."

In *Brown v. Gerald,* 100 Me. 351, 61 Atl. 785, 70 L. R. A. 472, 109 Am. St. Rep. 526, the court said:

"We think it should be conceded that the taking of the land for the purpose of supplying the public, or so much of the public as wishes it, with electric lighting is for a public use."

And again:

"We repeat that we think that no one would now deny that electric lighting for the public is a public use, and that a corporation engaged in that business may properly be granted the right of eminent domain for that use."

This is now too well settled to admit of serious discussion.

1 Lewis, Eminent Domain (3d Ed.) sec. 268, says:

"The furnishing of electricity to the public for light, heat, or power—that is, to such members of the public within a given territory as may desire the current for any or all of such purposes—is a public use, for which the power of eminent domain may be exercised"

—citing in support thereof abundant authority, with no dissenting opinion, except *Brown v. Gerald, supra.*  Quoting approvingly from *Rockingham Co. L. & P. Co. v. Hobbs,* 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581, that eminent author further says:

"The knowledge recently acquired concerning electricity has made it possible to divide power into any desired portions, and to freely transmit the same to almost any point for use.  This has created a demand for power which, though not so universal as the demand for water, is nevertheless of a public character.  Like water, electricity exists in nature in some form or state, and becomes useful as an agency of man's industry only when collected and controlled.  It requires a large capital to collect, store, and

distribute it for general use.    The cost depends largely upon the location of the power plant.    A water power or a location upon tidewater reduces the cost materially.    It may happen that the business cannot be inaugurated without the aid of the power of eminent domain for the acquisition of necessary land or rights in land.    All these considerations tend to show that the use of land for collecting, storing, and distributing electricity, for the purpose of supplying power and heat to all who may desire it, is a public use, similar in character to the use of land for collecting, storing, and distributing water for public needs—a use that is so manifestly public 'that it has seldom been questioned and never denied.' "

Hence, believing, as we do, that the Legislature having granted, and this corporation having accepted, the right of eminent domain, and that, in the exercise of the grant, it impliedly agrees and comes under obligation to perform all those duties in which the public is interested, and to aid in the performance of which the grant was made, including the duty to serve the public upon equal and reasonable terms, which it may be compelled to do, we are of opinion that the proposed use is a public use, and that the demurrer was properly overruled.    Affirmed.

HAYES and KANE, JJ., concur; WILLIAMS and DUNN, JJ., absent, and not participating.