Patricia K. BARRETT, now, Patricia K. Sulcer, Appellant,

v.

John A. BARRETT, Jr., Appellee.

No. 75014.

Supreme Court of Oklahoma.

July 19, 1994.

---

David J. Batton, Norman, for appellant.

Charles M. Laster, Shawnee, for appellee.

Michael Minnis, David McCullough, Michael Minnis & Associates, P.C., Oklahoma City, for amicus curiae, Citizen Band Potawatomi Indian Tribe of Oklahoma.

SIMMS, Judge.

Patricia K. Sulcer, formerly Patricia K. Barrett (Sulcer), appeals the order of the Cleveland County District Court (the District Court) dismissing her petition for divorce from appellee, John A. Barrett (Barrett). The District Court granted Barrett's dismissal motion on the grounds that the Tribal District Court for the Citizen Band Potawatomi Indian Tribe of Oklahoma (the Tribal Court) had previously granted a divorce to the parties and that such divorce decree was binding.

The Court of Appeals reversed the District Court's order and remanded the cause to the District Court to conduct an evidentiary hearing to inquire into the "foreign judgment" (the Tribal Court divorce decree). We granted certiorari to consider the first impression question of whether the judgments of Tribal Courts are entitled to Full Faith and Credit in the courts of the State of Oklahoma. The facts are as follows.

Barrett is a member of Citizen Band Potawatomi Indian Tribe of Oklahoma (the Tribe) and was elected as Business Manager of the Tribe. Sulcer was an employee of the Tribe but was not an enrolled member. Sulcer and Barrett married, but the couple did not have a tribal ceremonial wedding nor did the wedding occur on the Tribe's reservation. They were neither domiciled within the boundaries of Tribal reservation nor were any of their property or business holdings located within such boundaries. After one-and-a-half years of marriage, Barrett filed for divorce in the Tribal Court. Neither party was represented by counsel, and both appeared personally for a hearing on the divorce petition. The Tribal Court granted a consent divorce and divided the property of the couple according to their expressed wishes.

Ten months later, Sulcer filed a petition for divorce in Cleveland County District Court (District Court) alleging Barrett procured a foreign divorce not recognized by Oklahoma by using duress, fraud and threats against Sulcer to get her to consent to the Tribal Court's jurisdiction and divorce decree. Barrett entered his special appearance and moved for dismissal of the divorce petition on the grounds that the marriage was dissolved by the prior divorce. In her response, Sulcer attached an affidavit setting forth details of the alleged fraud, coercion and duress. Barrett made no response denying the allegations.

Two days after filing her response to Barrett's motion in the District Court, Sulcer filed motions in the Tribal Court urging vacation of the divorce decree and/or the granting of a new trial. These motions were also based upon her allegations of fraud and coercion. Before the Tribal Court could rule on these motions, the District Court dismissed Sulcer's divorce petition specifically finding the Tribal Court divorce decree binding *unless subject to attack on grounds of fraud, coercion or duress.* In its order, the District Court noted that the determination of fraud, coercion or duress should be made by the court which granted the divorce, i.e. the Tribal Court. Sulcer then appealed the District Court's decision.

Sometime after the District Court's pronouncement, the Tribal Court heard evidence on Sulcer's allegations of fraud, coercion and duress and determined it had subject matter jurisdiction on the grounds that Barrett was a tribal member and it had personal jurisdiction over Sulcer because she had voluntarily submitted to the court's jurisdiction. Sulcer appealed that decision to the Supreme Court of the Tribe which affirmed. Neither of

those decisions has any impact upon our review of this case.

This Court has long recognized the validity of marriages and divorces between tribal Indians contracted according to the customs of their tribe even where those marriages or divorces would not normally be recognized under the laws of this State. *Cyr v. Walker*, 29 Okla. 281, 116 P. 931 (1911); *Buck v. Branson*, 34 Okla. 807, 127 P. 436 (1912); *James v. Adams*, 56 Okla. 450, 155 P. 1121 (1915); *Unussee v. McKinney*, 133 Okla. 40, 270 P. 1096 (1928); *Thomas v. Healey*, 152 Okla. 93, 3 P.2d 1047 (1931). These cases involved divorces granted according to the tribal customs and not as a result of a tribal court decree of divorce. In order to determine whether the District Court erred in dismissing the divorce petition we must consider the effect that a divorce decree of the Tribal Court has in the courts of this State.

Thus, the question before us is whether the District Court must recognize the divorce decree of the Tribal Court and give such judgment full faith and credit. The effect of the "Full Faith and Credit" clause of Article IV, § 1, of the U.S. Constitution [1] upon state courts confronted with the enforcement of tribal court decrees has been at issue before courts for many years. In the past, the application of Article IV, § 1, has been questioned due to the respective Indian Tribes being considered sovereign nations rather than as "States". *See, for example, In the Matter of the Marriage of Red Fox*, 23 Or.App. 393, 542 P.2d 918 (1975) and *Brown v. Babbitt Ford, Inc.*, 117 Ariz. 192, 571 P.2d 689 (App.1977). Other courts, however, have accorded full faith and credit to tribal court judgments under 28 U.S.C. § 1738 [2] by treating an Indian Tribe as a

---

1. U.S. Const. Art. IV, § 1 reads:

 "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

2. Title 28 U.S.C., § 1738, provides in pertinent part:

 \* \* \* \* \* \*

 "The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Territory" of the United States. *Jim v. CIT Financial Serv. Corp.*, 87 N.M. 362, 533 P.2d 751 (1975); *Sheppard v. Sheppard,* 104 Idaho 1, 655 P.2d 895 (1982). However, this Court has never before considered the issue.

In 1992, the Oklahoma State Legislature enacted a statute which affirms this Court's authority to establish standards for recognizing the judgments and decrees of tribal courts. Okla.Sess.Laws 1992, c. 384, § 1. The statute, codified at 12 O.S.Supp.1992, § 728, reads:

"A. This act affirms the power of the Supreme Court of the State of Oklahoma to issue standards for extending full faith and credit to the records and judicial proceedings of any court of any federally recognized Indian nation, tribe, band or political subdivision thereof, including courts of Indian offenses.

B. In issuing any such standard the Supreme Court of the State of Oklahoma may extend such recognition in whole or in part to such type or types of judgments of the tribal courts as it deems appropriate where tribal courts agree to grant reciprocity of judgments of the courts of the State of Oklahoma in such tribal courts."

In accordance with the authority granted by this statute, this Court adopted Rule 30 to the Rules for District Courts of Oklahoma, 12 O.S.Supp.1994, Ch. 2, App. on May 26, 1994. Rule 30(B) provides:

"The district courts of the State of Oklahoma shall grant full faith and credit and cause to be enforced any tribal judgment where the tribal court that issued the judgment grants reciprocity to judgments of the courts of the State of Oklahoma, provided, a tribal court judgment shall receive no greater effect or full faith and credit under this rule than would a similar or comparable judgment of a sister state."

Consequently, if the Tribal Courts of the Citizen Band Potawatomi Indian Tribe of Oklahoma grant reciprocity to the judgments of the State of Oklahoma, full faith and credit should be accorded to the Tribal Court de-

cree from this point forward. Although we do not give retroactive application of this rule to the case before us, the Legislature has clearly spoken on its desire for the courts of this State to give full faith and credit to the judgments of the courts of the Indian Tribes and this Court has enunciated the applicable standards under which such judgments are to be recognized. With this in mind, we look to general principles of law as to the recognition of foreign judgments. In *Britton v. Gannon,* 285 P.2d 407, 409 (Okla.1955), we held the courts of Oklahoma are:

"not required to recognize the judgment of a court of another state, territory, or country subject to the jurisdiction of the United States, where the court rendering the judgment was without jurisdiction or the judgment was obtained by extrinsic fraud."

Consequently, it need only be determined whether the Tribal Court had jurisdiction over the subject matter and personal jurisdiction over Sulcer and whether the judgment was obtained by extrinsic fraud.

## A.

### SUBJECT MATTER JURISDICTION

 It is well settled that subject matter jurisdiction cannot be conferred by consent of the parties nor can the requirement therefore be waived by the parties. *Brasier v. Brasier,* 200 Okla. 689, 200 P.2d 427 (1948); *Beach v. Beach,* 4 Okla. 359, 46 P. 514 (1896). *See also State ex rel. May v. Seneca–Cayuga Tribe of Oklahoma,* 711 P.2d 77, 88 (Okla. 1985) (Indian Tribes cannot consent to the State's assumption of jurisdiction over federally-preempted subject matter). Therefore, Sulcer could not consent to subject matter jurisdiction; either the Tribal Court had jurisdiction or it did not.

The order of the Tribal Court denying Sulcer's motion to vacate the decree indicates that the Tribal Court determined it possessed subject matter jurisdiction merely because Barrett was an enrolled member of the

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and

Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

Tribe. Along with a copy of the Tribal Court divorce decree, Barrett attached to his Motion to Dismiss an "Exhibit B" purporting to be a photocopy of Chapter 11 of the Codes and Ordinances of the Citizen Band Potawatomi Indian Tribe of Oklahoma. The Tribal Court rested its subject matter jurisdiction upon one of the statutes in this code, Section 1112 which is entitled "Residence of Plaintiff or defendant". Section 1112 confers subject matter jurisdiction in civil matters by providing:

"*Either the plaintiff* or the defendant *in an action for divorce must have been* an actual resident, in good faith, of the Tribal jurisdiction for three (3) months next preceding the filing of the petition, or *a member of the Tribe.*" (Emphasis added).

Under the laws of the Tribe, subject matter jurisdiction was proper in the Tribal Court on the basis of Barrett being an enrolled member of the Tribe. Hence, Sulcer's argument that subject matter jurisdiction was lacking is without merit.

### B.

### PERSONAL JURISDICTION OVER SULCER

■ Barrett claims Sulcer voluntarily submitted to personal jurisdiction, and the Tribal Court so found in its order denying Sulcer's motion to vacate. The Tribal Court divorce decree bears the signature of Sulcer, and Sulcer's Answer to Barrett's divorce petition filed in the Tribal Court reads:

"1. Defendant consents to the jurisdiction of the Tribal District Court of the Citizen Band Potawatomi Indians of Oklahoma.

2. Defendant admits that jurisdiction and venue are proper in this Court."

The Tribal Court record clearly indicates that Sulcer submitted to personal jurisdiction. Sulcer's only argument is that Barrett fraudulently induced her to submit to personal jurisdiction and threatened to harm her if she refused.

In *Britton v. Gannon, supra,* Gannon brought an action in an Oklahoma district court to have an Illinois state court judgment enforced against Britton. Britton alleged that Gannon had named Britton as a necessary defendant in the Illinois action but promised not to take a judgment against Britton. Britton did not defend the lawsuit and had no knowledge of the judgment until the Oklahoma action was filed. The district court refused to allow evidence from Britton on the promise and determined it had no right to hear and determine the validity of Britton's defenses. Full faith and credit was given the Illinois judgment. On appeal, we reversed holding that the state court did not have to recognize the judgment where the other court had no jurisdiction or the judgment was obtained by extrinsic fraud. The Court explained:

"Extrinsic fraud has been defined as *any fraudulent conduct of the successful party which was practiced outside of an actual adversary trial* directly and affirmatively on the defeated party whereby he was *prevented from presenting fully and fairly his side of the cause.* Included in such definition are ... *false promises of compromise,* ... and the like.

\* \* \* \* \* \*

Regardless of the reason assigned for the rule, *the weight of authority is overwhelming that a defense of extrinsic fraud of the nature here sought to be plead and proved may be interposed* in a suit on a foreign judgment, not for the purpose of reviewing, setting aside, modifying, or annulling the judgment of the sister state, but *to prevent its enforcement in the collateral court.*" 285 P.2d at 409–10 (Emphasis added) (Citations omitted).

We went on to hold that the trial court in *Britton* "erred in refusing the proffered evidence of extrinsic fraud." *Id.*

Sulcer is entitled to present evidence to the District Court showing she was induced to consent to the personal jurisdiction of the Tribal Court through extrinsic fraud practiced upon her by Barrett. If Sulcer's consent to personal jurisdiction was the result of extrinsic fraud, then the District Court need not recognize the decree of the Tribal Court.

Although the District Court in the case at bar held that the fraud determination was one that the Tribal Court should make, Brit-

ton teaches that the District Court should hear the evidence and make the determination. The District Court erred in refusing to hear Sulcer's evidence of fraud, and this matter should be reversed and remanded to the District Court to allow Sulcer to present such evidence.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED and the order of the District Court is REVERSED and REMANDED for proceedings consistent with this opinion.

HODGES, C.J., LAVENDER, V.C.J., and ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

HARGRAVE, J., concurs in result.