2007 OK CIV APP 18

**PUBLIC SERVICE COMPANY OF OKLAHOMA, Plaintiff/Appellee,**

v.

**B. WILLIS, C.P.A., INC., Defendant/Appellant.**

**No. 101557.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 19, 2006.

Rehearing Denied Oct. 20, 2006.

Certiorari Denied Feb. 5, 2007.

Stratton Taylor, Mark H. Ramsey, Clinton D. Russell, Taylor, Burrage, Foster, Mallett, Downs & Ramsey, Claremore, OK, for Plaintiff/Appellee.

William T. Dickson, Tulsa, OK, for Defendant/Appellant.

JOHN F. FISCHER, Judge.

¶ 1 Defendant, B. Willis, C.P.A., Inc. (Willis), appeals from an appealable final order of the Trial Court denying Willis's Motion to Dismiss and overruling his Objection and Amended Objection to the Report of Commissioners in a condemnation proceeding brought by Public Service Company of Oklahoma (PSO) to gain an easement to Willis's property for the construction of a railroad. Based on our review of the record on appeal and applicable law, we affirm.

## BACKGROUND FACTS

¶ 2 PSO commenced this condemnation proceeding in 1992 to acquire an easement across property owned by Willis, for the purpose of building a thirteen-mile railroad spur to transport coal to its Oologah power plant. In its petition, PSO alleged that it is a public service corporation duly authorized under 66 O.S.1991 §§ 51–60 and 27 O.S.1991 § 7,[1] to exercise the power of eminent domain, that its acquisition of Willis's property is necessary for a public purpose and that its

1. Hereafter, unless otherwise noted, we will cite to the current version of the statutes.

efforts to secure the right-of-way by private purchase had been unsuccessful.

¶ 3 Commissioners were appointed and filed their report pursuant to 66 O.S.2001 § 53. PSO paid the award into court on December 28, 1992, the same day the report was filed. Willis filed exceptions to the Commissioners' report as permitted by section 55, and alleged that the proposed taking of his property was not for a public use or reasonably necessary therefor and demanded a jury trial. The Trial Court held in favor of PSO and Willis commenced the first of numerous appeals in various state and federal tribunals and, some of which, continue as of the date of this opinion.

¶ 4 In June 1997, the Oklahoma Supreme Court issued an opinion concluding that Willis was wrongfully denied a fair opportunity to challenge PSO's "asserted but unproven right to take his property as well as the right to conduct discovery," and reversed and remanded for further proceedings. *Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.,* 1997 OK 78, ¶ 21, 941 P.2d 995, 1000 (Willis I). Pursuant to that direction and after further proceedings and discovery, on October 14, 2004, the Trial Court conducted a hearing on Willis's motion to dismiss and his exception and amended exception to the Report of the Commissioners. On November 15, 2004, the Trial Court entered its order finding that PSO had established that its condemnation of Willis's property was for a public use and overruled Willis's motion to dismiss and exceptions.[2] Willis again appeals.

¶ 5 In his brief-in-chief, Willis asserts four propositions for review:[3] (1) His property cannot be valued until PSO establishes its right to condemn, and the Supreme Court's 1997 reversal in Willis I established, as a matter of law, that PSO trespassed when it constructed the railway spur on his property; (2) The Trial Court was without jurisdiction

to enter the 2004 Order because federal law preempted any exercise of State law; (3) The condemnation should be set aside because PSO engaged in fraud, abuse and oppression; and (4) A new appraisal of the condemned property should be ordered.

## STANDARD OF REVIEW

¶ 6 The standard of review for condemnation proceedings is well established. As noted by the Court in Willis I, condemnation proceedings involve both factual determinations and legal rulings. "The necessity, expediency and propriety of exercising the power of eminent domain are questions of general public policy and are governed by statute." *Willis* at ¶ 20, 941 P.2d at 1000. "Whether it is necessary to take particular property for the economic and efficient accomplishment of a lawful public purpose is a question of fact to be determined from the attendant facts and circumstances developed by the evidence." *Id.* at ¶ 18, 941 P.2d at 1000.

¶ 7 "Under our constitutional provisions and cases interpreting them, the issue of whether a proposed taking is for a 'public use' is a judicial question." *Id.* at ¶ 19, 941 P.2d at 1000 (citing *McCrady v. Western Farmers Elec. Coop.,* 1958 OK 43, 323 P.2d 356). See also *Sublett v. City of Tulsa,* 1965 OK 78, ¶ 34, 405 P.2d 185, 196; *Arthur v. Bd. of Comm'rs of Choctaw County,* 1914 OK 181, 141 P. 1.

¶ 8 "A valid declaration of necessity by the appropriate body will be viewed as conclusive by the courts in the absence of a showing of actual fraud, bad faith, or an abuse of discretion by the condemning authority." *Willis* at ¶ 20, 941 P.2d at 1000, (citing *Rueb v. Oklahoma City,* 1967 OK 233, 435 P.2d 139).[4] "The findings of the trial court on the issue of the necessity of the taking will not be

---

2. Still pending before the Trial Court at the time of this appeal is Willis's demand for jury trial regarding the value of his property taken by PSO.

3. Allegations of error set forth in the petition in error but not briefed by the appellant are deemed waived. *Oklahoma City Urban Renewal Auth. v. City of Oklahoma City,* 2005 OK 2, n. 9, 110 P.3d 550, 554 n. 9.

4. The value of the condemned property is also a question of fact and, at the request of the land owner, may be tried to a jury. Okla. Const. art. 2, § 24; 66 O.S.2001 § 55. Willis's exceptions to the award of the Commissioners was tried to the Court, and Willis does not claim in this appeal that he properly requested but was denied a jury trial on that issue.

disturbed on appeal where there is evidence to support such findings." *Id.* at ¶ 18, 941 P.2d at 1000, (citing *City of Tulsa v. Williams,* 1924 OK 136, 227 P. 876 ).

## DISCUSSION

¶ 9 The power of eminent domain lies dormant with the State "until such time as the Legislature by specific enactment delineates the manner and through whom it may be exercised." *City of Tahlequah v. Lake Region Elec. Coop., Inc.,* 2002 OK 2 ¶ 7, 47 P.3d 467, 471 (footnote omitted). See also *City of Pryor Creek v. Pub. Serv. Co. of Okla.,* 1975 OK 81 ¶ 9, 536 P.2d 343, 345–46. Condemnation is a proceeding strictly controlled by the Constitution and statutes prescribed by the Legislature. *Willis* at ¶ 16, 941 P.2d at 999.

¶ 10 Any governmental body subordinate to the State, which would include PSO (17 O.S.2001 § 151 (c)), may not exercise a power of eminent domain in the absence of statutory authority. *Bd. of County Comm'rs of Muskogee County v. Lowery,* 2006 OK 31, ¶ 10, 136 P.3d 639, 646. The Legislature has authorized PSO to, and specified the manner in which PSO may, exercise the power of eminent domain. Any corporation licensed to do business in Oklahoma to furnish electricity[5] is granted the same power of eminent domain as that granted to railroads. 27 O.S.2001 § 7; 66 O.S.2001 § 57.

¶ 11 The procedure by which railroads are authorized to exercise the power of eminent domain has been established by the Legislature. 66 O.S.2001 §§ 51–60. Superimposed on this statutory procedure are the constitutional limitations of Sections 23 and 24 of Article II of the Oklahoma Constitution, *Allen v. Transok Pipe Line Co.,* 1976 OK 53, ¶ 12, 552 P.2d 375, 379, and the appropriate provisions of the United States Constitution. Okla. Const. art. 1, § 1.

¶ 12 When interpreting the relevant taking authority, we are guided by the long-standing general rule of strict statutory construction applicable to eminent domain statutes. *City of Cushing v. Gillespie,* 1953 OK 121, 256 P.2d 418. In addition, we generally construe our state constitutional eminent domain provisions strictly, in favor of the owner and against the condemning party. *Stinchcomb v. Oklahoma City,* 1921 OK 154, ¶ 0, 198 P. 508, 508 (Syllabus 1 by the Court). The issues raised by Willis in this appeal are to be resolved within the framework of these legal principles.

## PROPOSITION I

¶ 13 In Proposition I, Willis challenges the Trial Court's November 2004 Order, principally because he contends the "date of take" used for the valuation of his property was in error. He comes to this conclusion by arguing that although his property was valued as of December 28, 1992, the date the Commissioners filed their Report, PSO's right to condemn was not established until November 15, 2004, when the Trial Court entered the order that is the subject of this appeal. From this, he concludes not only that the date of valuation was six years premature, but also that until PSO's right to condemn was established, PSO was a trespasser on his property when it constructed the rail spur.[6] Willis misinterprets the effect of the Supreme Court's ruling in Willis I.

¶ 14 Following the filing of PSO's 1992 Petition for Condemnation, the Trial Court appointed commissioners pursuant to 66 O.S. 2001 § 53 to value the portion of Willis's property that PSO was seeking to condemn. The Commissioners' Report was filed with the Trial Court on December 28, 1992 and PSO paid the amount of the award to the Court Clerk on that date. The payment of that award authorized PSO to enter onto Willis's property to construct its rail spur regardless of Willis's subsequent appeal. 66

---

5. According to the Trial Court's findings, unchallenged by Willis in this appeal, PSO is licensed to do business in Oklahoma for the purpose of generating electricity.

6. Willis extends this argument to support his claim of ownership of the portion of the rail spur crossing his property but has neither sought nor preserved for appeal any ruling of the Trial Court addressing this issue. Therefore, we are not required to consider this argument. Okla. Sup. Ct. R. 1.26, 12 O.S.2001, ch. 15, app.1.

O.S.2001 § 56. Payment to the Court Clerk in lieu of payment to the owner is a procedure authorized not only by statute, but also by the Oklahoma Constitution. Okla. Const. art. 2, § 24. The Trial Court held a hearing on January 27, 1994, to determine PSO's right to take Willis's property in light of his exceptions to the Commissioners' Report. Some twelve years later, that issue remains before this Court.

¶ 15 The Oklahoma Supreme Court's decision in Willis I established only that Willis had been "denied an opportunity to challenge PSO's asserted but unproven right to take his property" in the 1994 hearing. *Willis* at ¶ 21, 941 P.2d at 1000. Pursuant to the direction of the Oklahoma Supreme Court, the Trial Court provided Willis that opportunity. In this appeal, Willis does not contend that the Trial Court failed to provide the relief ordered in Willis I. He argues only that the Trial Court reached the wrong result.

¶ 16 In its order of November 15, 2004, the Trial Court found that PSO had established its right to condemn Willis's property. Consequently, the right to condemn Willis's property first "asserted" by PSO in its 1992 petition was ultimately "proven" to the satisfaction of the Trial Court at the hearing on October 14, 2004. "The findings of the trial court on the issue of necessity of the taking will not be disturbed on appeal where there is evidence to support such findings." *Id.* at ¶ 18, 941 P.2d at 1000.

¶ 17 There is nothing in the Oklahoma Constitution, the applicable condemnation statutes or Willis's submissions in this appeal that precludes the establishment of the right to condemn at a date subsequent to the date the condemned property is valued. That is, in fact, the required procedure. Within thirty days after a commissioners' report is filed, an aggrieved party may file exceptions to the report and/or within sixty days request a jury trial on the amount of the award. 66 O.S.2001 § 55. This procedure offers Willis an opportunity to challenge both PSO's right to take his property and the value of his condemned property as determined by the Commissioners.

¶ 18 Further, we note that Willis has obtained a determination from the United States Court of Appeals for the Tenth Circuit that the United States Constitution does not require pre-taking compensation. *B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Okla.,* No. 97–5107, 182 F.3d 931 (Table), 1999 WL 335207 (10th Cir. May 27, 1999), *cert. denied,* 528 U.S. 1003, 120 S.Ct. 496, 145 L.Ed.2d 383 (1999).[7] As in this case, Willis argued to the Tenth Circuit that PSO was not entitled to possession of his property until its right to condemnation had been finally determined, citing *Town of Ames v. Wybrant,* 1950 OK 197, 220 P.2d 693, to support that argument. The Tenth Circuit did not find *Wybrant* to be inconsistent with other Oklahoma Supreme Court cases uniformly accepting the pre-taking procedure authorized by section 53(C). We come to the same conclusion as the federal court. *Wybrant* does not hold that section 53(C) is unconstitutional.

¶ 19 Oklahoma's eminent domain statutes are consistent and coherent. They provide Willis a right to appeal the condemnation before final determination of all the issues that may be raised in the Trial Court without the requirement of posting a bond.[8] The same statutes provide PSO a right to take at

---

7. In resolving the federal issue, the Tenth Circuit, in an unpublished opinion, determined that the United States Constitution does not require pre-taking compensation if the State provides a reasonable and adequate provision for obtaining compensation after the taking. Citing *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and *Biddison v. City of Chicago,* 921 F.2d 724, 727 n. 4 (7th Cir.1991), the Tenth Circuit found that Oklahoma's eminent domain procedures are not "complete" until (1) the condemnor's right to take is finally resolved and (2) the amount of the

condemnation award is determined. Because determination of the award generally occurs after the condemnor has taken possession, any failure by the State to provide adequate compensation can only be determined after the taking and only at that point would any federal issue be ripe for review. *B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Okla.,* No. 97–5107, slip op. at 3, 182 F.3d 931 (Table), 1999 WL 335207 (10th Cir. May 27, 1999), *cert. denied,* 528 U.S. 1003, 120 S.Ct. 496, 145 L.Ed.2d 383 (1999).

8. Okla. Const. art. 2, § 24.

least temporary possession[9] of the condemned property on payment of the condemnation award. This legislative program ensures that public works on condemned property can continue[10] subject to judicial review and without prejudice to the condemnee's right to raise any issue in that review. This system is not inconsistent with the Oklahoma Constitution, and, as noted by the Tenth Circuit, it is permitted by the United States Constitution.

¶ 20 We find that there is sufficient evidence to support the Trial Court's finding that PSO was entitled to take Willis's property for the purpose of constructing a rail spur and that the Trial Court's ruling that this constituted a public use justifying condemnation is correct as a matter of law. Willis's argument that the value of his property must be determined as of the date of the Trial Court's order determining PSO's right to take that property is not supported by law.

¶ 21 Just as the necessity of taking under eminent domain must be "determined by conditions existing at the time of the taking," *Willis* at ¶ 18, 941 P.2d at 1000, so also the value of the taken property can only be determined as of the time of the taking. Willis confuses PSO's taking of his property with the confirmation of that right by the Trial Court. The Trial Court correctly determined, as a matter of law, that Willis's property should be valued as of the date the Commissioners completed their valuation, and the Court Clerk properly filed and recorded their Report. 66 O.S.2001 § 53 (C). Based on this valuation, the date PSO took Willis's property is determined by the date PSO paid the Commissioner's award. *State ex rel. Dept. of Transp. v. Post*, 2005 OK 69, 125 P.3d 1183.

## PROPOSITION II

¶ 22 Willis next argues that the Trial Court was without jurisdiction to enter its November 2004 Order because federal regulation of railroads preempts any assertion of State authority over the rail spur constructed by PSO. This argument is precluded by an adverse ruling Willis obtained from the Surface Transportation Board (STB).

¶ 23 On February 15, 2001, Willis filed a Petition for Declaratory Order with the STB asking it to declare that PSO's rail spur had been improperly constructed because PSO had not first obtained authority from the STB to construct that spur. Willis's Petition was denied by Order dated October 1, 2001, in which the STB found that, while it had jurisdiction over transportation by a rail carrier, PSO was not a rail carrier. The STB concluded that in its construction and operation of the spur, PSO was not subject to the STB's jurisdiction because the spur was a private track. *B. Willis, C.P.A., Inc.—Petition for Declaratory Order*, 2001 WL 1168090 (S.T.B. Oct.16, 2001) (No. 34013).

¶ 24 Willis sought to reopen this decision in June of 2002. The STB concluded that the "new" evidence Willis sought to introduce was neither new nor previously unavailable to Willis and that, regardless, the newly proffered evidence did not lead to any different conclusion than the STB had reached in October of 2001:

> Thus, as the October 2001 decision correctly concluded (at 4), where, as here, "a shipper does not hold out to provide common carrier railroad service over a line it constructs and maintains to serve its own facility, and no other shippers are served by the line, then neither that construction, nor a railroad's operation over that track to reach the shipper's facility, requires ICC or Board authorization or approval."

*B. Willis, C.P.A., Inc.—Petition for Declaratory Order*, 2002 WL 1730018 (S.T.B. July 23, 2002) (No. 34013).

¶ 25 Unsatisfied, Willis appealed the STB's decision to the United States Court of Appeals for the D.C. Circuit, which affirmed in an unpublished opinion finding that the

---

9. As discussed in Proposition IV, a condemnor who takes possession of condemned property proceeds at its own risk until a final non-appealable judgment confirming its right to condemn the property has been entered. The statutory system in this State permits the condemnor to take that risk if it so chooses.

10. 66 O.S.2001 § 56.

STB did not have jurisdiction over the Willis/PSO dispute. *B. Willis, C.P.A., Inc. v. Surface Transp. Bd.*, 2002 WL 31684796, 51 F.App'x 321 (D.C.Cir.2002). The D.C. Circuit denied Willis's petition for rehearing and petition for rehearing *en banc* and the United States Supreme Court denied certiorari. *B. Willis, C.P.A., Inc. v. Surface Transp. Bd.*, 540 U.S. 811, 124 S.Ct. 51, 157 L.Ed.2d 23 (2003). Willis has had his day in court on this issue. He may not be satisfied with the result, but he is, nonetheless, bound thereby and may not re-litigate the findings of the STB in the courts of Oklahoma. *Constant v. U.S.*, 929 F.2d 654, 657 (Fed.Cir. 1991); *Nat'l Diversified Bus. Servs., Inc. v. Corp. Fin. Opportunities, Inc.*, 1997 OK 36, 946 P.2d 662. Absent federal jurisdiction over PSO in its construction and operation of this rail spur, there is no basis for federal preemption of the proceedings in the Trial Court.

## PROPOSITION III

¶ 26 Willis next argues that the Trial Court should have found that PSO had engaged in fraud and abuse and oppression, and should have refused to confirm PSO's exercise of its eminent domain power on that basis. To advance this argument, Willis asserts that PSO did not have authority as a public utility to cross a public road, street or highway. Willis does not argue that any "public road, street or highway" crossed by PSO is located on his property. The issue before the Trial Court, and in this appeal, is PSO's right to condemn Willis's property. The Trial Court's determination that, as a matter of law, PSO had the power of eminent domain to condemn Willis's property is correct. 27 O.S.2001 § 7; 66 O.S.2001 § 57; *Tuttle v. Jefferson Power & Improvement Co.*, 1912 OK 232, 122 P. 1102. Willis has pointed to no representation by PSO that fraudulently enabled it to use the power of eminent domain granted to it by the Legislature.

¶ 27 Willis's assertion of oppression by PSO is equally unpersuasive. Although it took, as Willis notes, seven years and an appeal to the Oklahoma Supreme Court, Willis recognizes, in his brief-in-chief, that he was permitted to conduct discovery and "afforded a hearing [on] October 14, 2004." He points to no defect in that proceeding that affected his constitutional right to challenge PSO's condemnation of his property. As noted above, there is ample evidence in the record to support the Trial Court's conclusion that PSO had lawfully exercised its power of eminent domain in condemning Willis's property. Consequently, we are required to leave that decision undisturbed on appeal. *Willis* at ¶ 18, 941 P.2d at 1000.

## PROPOSITION IV

¶ 28 Willis includes five separate arguments in support of his final proposition that a new appraisal should be ordered: (1) The Commissioners in this case were selected by PSO and not the Trial Court as required by 66 O.S.2001 § 53; (2) The instructions to the Commissioners wrongfully precluded them from considering information from the landowners; (3) The Commissioners failed to value only the easement being condemned by PSO; (4) The Commissioners failed to consider the value of coal, limestone and topsoil removed from Willis's property by PSO during construction of its rail spur; and (5) The Commissioners' Report fails to consider the value of the rail spur bridge constructed on Willis's property, which he claims ownership of by virtue of Willis I.

¶ 29 The Trial Court considered Willis's challenge to the manner in which the Commissioners were appointed and rejected Willis's argument in its Order of November 14, 2004. There is sufficient evidence in the record to support the Trial Court's finding on this issue and it will not, therefore, be disturbed on appeal. *Willis* at ¶ 18, 941 P.2d at 1000.

¶ 30 As PSO correctly points out, the issue before the Trial Court at the October 2004 hearing was PSO's right to condemn Willis's property, not the value of the property condemned. Based on the record before this Court, the Trial Court has yet to reach the second issue. Consequently, at the time of this appeal, there was no judgment or appealable order that would be relevant concerning arguments two through four of Wil-

lis's Proposition IV. Those arguments were premature in the Trial Court proceedings from which this appeal was taken and need not be considered here.

¶ 31 Willis's final argument in Proposition IV is a variation of the argument asserted in Proposition I and dependent on his misinterpretation of the effect of Willis I. The Trial Court's 1992 Order was a final, appealable order. 12 O.S.2001 § 953. Willis was entitled to appeal from that Order and could have stayed the effect of that Order by posting a bond, 12 O.S.2001 § 990.4, but he was not required to do so. Okla. Const. art. 2, § 24; 66 O.S.2001 § 56. Nonetheless, Willis's appeal, without posting a bond, did not "delay the prosecution of the work." 66 O.S. 2001 § 56.

¶ 32 PSO was entitled to rely on the Trial Court's Order and construct its rail spur. Until reversed on appeal, the Order of the Trial Court was presumed correct. *Hamid v. Sew Original,* 1982 OK 46, ¶¶ 6–7, 645 P.2d 496, 497. And Willis's appeal did not stay or suspend the effectiveness of that Order, particularly in light of the authority to proceed with the work granted in section 56. *Davis v. Rowland,* 1952 OK 144, ¶ 5, 246 P.2d 376, 377. PSO could have proceeded with the work at its own risk until its "asserted" right to condemn was "proven" to the satisfaction of the Trial Court and recorded in a final non-appealable judgment. The authorities cited by Willis clearly support his argument on this point. Just as clearly, however, PSO was not prevented by law from taking that risk. The Trial Court has now confirmed PSO's right to condemn Willis's property and construct a rail spur with any necessary bridges. We affirm that ruling.

## CONCLUSION

¶ 33 There is sufficient evidence in the record to support the Trial Court's finding that PSO's taking was for a public purpose as well as for its refusal to set aside that finding based on Willis's claims of fraud, abuse and oppression, and irregularity in the appointment of the Commissioners. The exercise of jurisdiction by the Trial Court was not preempted by federal law. The Trial Court's confirmation of PSO's exercise of its power of eminent domain was correct as a matter of law, and we affirm.

¶ 34 AFFIRMED.

WISEMAN, P.J., and GOODMAN, J., concur.