2008 OK CIV APP 44

Charles JONES and Jeannette Jones, husband and wife, Douglas Klintworth and Mary Ann Klintworth, husband and wife, Plaintiffs/Appellees,

v.

Edward M. RANSOM and Anna F. Ransom, husband and wife, Defendants/Appellants.

No. 103,835.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 20, 2008.

Certiorari Denied May 1, 2008.

W.C. Sellers, Jr., W.C. "Bill" Sellers, Inc., Sapulpa, OK, for Plaintiffs/Appellees.

David K. Wheeler, Butler & Wheeler, PLLC, Jenks, OK, for Defendants/Appellants.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Edward M. and Anna F. Ransom appeal from the Trial Court's denial of their Objection to Amended Petition for Condemnation. Based on our review of the record on appeal and applicable law, we affirm.

## BACKGROUND

¶ 2 The Klintworths and the Joneses filed their petition to condemn an access easement pursuant to 27 O.S.2001 § 6, alleging the easement was necessary to provide access to

their property. The Ransoms objected and a hearing was held on August 7, 2006. The following evidence was presented at that hearing.

¶ 3 In 1959, the Army Corps of Engineers acquired property previously owned by Sam and Mary Boone for the construction of Lake Keystone. Not acquired was a three-acre tract owned by the Boones that abuts property now owned by the Ransoms.[1] Access to this three-acre tract was eliminated by the construction of the lake. The Klintworths purchased the tract from Mary Boone in 1986 and sold half to the Joneses. There was no access to a public road at the time they purchased the property.

¶ 4 The property surrounding this tract is owned by the Corp of Engineers, David and Janet Greenwood and the Ransoms. The Corp of Engineers has refused to grant an access easement to the tract across its property. The Greenwoods have also refused to grant an easement across their property because they have built a house on their property, utility lines are located where any easement would be located, and they consider an access easement a "hardship."

¶ 5 The Klintworths and the Joneses have tried to sell the property, but the only offer they have received is from the Ransoms in the amount of the price they paid for the property twenty years earlier. At the time this suit was filed, the Klintworths and the Joneses were negotiating with the Ransoms' predecessor in interest to purchase an easement. The Klintworths and the Joneses no longer intend to build houses on the property but intend to sell the property after acquiring the easement. The easement that the Klintworths and the Joneses seek across the Ransoms' property is the shortest and most direct route to a public road and would require the removal of the fewest trees.

¶ 6 At the conclusion of the hearing, the Trial Court found that the Klintworths and the Joneses "have no reasonable means of ingress or egress to and from their property and that they are entitled to a right-of-way

1. Mark and Betty Stewart, from whom the Ransoms acquired this property, were originally named as defendants but have been dismissed by the Trial Court because they no longer have any interest in the property.

by necessity." The Trial Court then ordered that the condemnation proceed pursuant to 27 O.S.2001 § 6. It is from this ruling that the Ransoms appeal.

## APPELLATE JURISDICTION

¶ 7 Appellants assert that the Trial Court's order is appealable pursuant to 12 O.S.2001 § 953 and *Watchorn Basin Ass'n v. Okla. Gas & Elec. Co.*, 1974 OK 27, 525 P.2d 1357. The question of this Court's jurisdiction is fundamental and may neither be waived by the parties nor overlooked by the court. *Barrett v. Barrett,* 1994 OK 92, ¶ 13, 878 P.2d 1051, 1054.

¶ 8 This Court has jurisdiction to decide only those appeals from a trial court's judgments, final orders and certain interlocutory orders. 12 O.S.2001 § 952; 20 O.S.2001 § 30.1. "A judgment is the final determination of the rights of the parties in an action." 12 O.S.2001 § 681. The order appealed in this case is not a judgment. Further, none of the parties has asked the Trial Court to certify its order for interlocutory appeal, *see* 12 O.S.2001 § 994, nor is it an interlocutory order appealable by right, *see* 12 O.S.2001 § 993.

¶ 9 A final order is defined as:

An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

12 O.S.2001 § 953. Condemnation is a special proceeding. *Town of Ames v. Wybrant,* 1950 OK 197, ¶ 13, 220 P.2d 693, 695–96. Article 2, § 23 of the Oklahoma Constitution provides: "No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity ... in such manner as may be prescribed by law." Title 27 O.S.2001 § 6 prescribes the manner in which private property may be

taken for a private way of necessity: "Any private person, firm or corporation shall have power to exercise the right of eminent domain in like manner as railroad companies for private ways of necessity."

¶ 10 The parties accurately describe in their appellate briefs the lack of extensive authority interpreting the private condemnation statute. Nonetheless, there is ample authority interpreting the manner in which railroad companies may condemn private property. *See* 66 O.S.2001 §§ 51–66.[2] Title 66 O.S.2001 § 56 provides for an appeal from the district court regarding decisions on objections to the report of the commissioners, and decisions interpreting that statute hold that a landowner is entitled to a judicial determination of the right to take prior to determination of the amount of just compensation. *See Wybrant* (holding that the right to appeal a trial court's taking decision provided in section 56 adequately protected the landowners' rights). *See also Blankenship v. Bone,* 1974 OK CIV APP 54, 530 P.2d 578 (involving a private condemnation proceeding pursuant to 27 O.S.2001 § 6, and holding that a landowner in a private condemnation proceeding waived the right to appeal the necessity of the taking by failing to raise that issue in his exception to the commissioners' report).

¶ 11 The *Wybrant* Court refused to issue a writ prohibiting the trial court from deferring its taking decision until the commissioners had filed their report. "[In the] ordinary course, such judicial determination is not proper until the matter of the condemnation is brought before the court by objection to the report of the Commissioners." *Wybrant,* 1950 OK 197 at ¶ 13, 220 P.2d at 696. Consequently, passing the issue "until the Commissioners had filed their report was consistent with orderly procedure and proper." *Id.*

¶ 12 In this case, however, the Trial Court's taking decision was made prior to the appointment of commissioners. We do not read *Wybrant* as foreclosing all other procedural methods for obtaining appellate review of the right to take property by eminent domain. In fact, *Wybrant* expressly recog-

---

**2.** *See, e.g., Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.,* 2007 OK CIV APP 18, 155 P.3d 845

(approved for publication by the Oklahoma Supreme Court), and cases cited therein.

nized that judicial determination of the taking decision might be appropriate prior to consideration of exceptions to the commissioners' report.

> [W]e deem it well to say that the District Court after objection to the Commissioners' report or the trial judge prior thereto in a proper case and upon proper application and showing in connection with preliminary steps in condemnation could make an order temporarily restraining the condemnor from taking possession of the land pending final determination of the right to condemn.

*Id.* at ¶ 16, 220 P.2d at 696.

■ ¶ 13 In deciding whether the Ransoms must wait to appeal until commissioners have been appointed and filed their report, we first note that the necessity of the taking requires a judicial determination beyond the scope of the matters the commissioners are authorized to determine. *See* 66 O.S.2001 § 53(C) (commissioners "shall inspect said real property and consider the injury which said owner may sustain by reason of the condemnation and they shall assess the just compensation to which said owner is entitled"); *Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.,* 1997 OK 78, ¶ 19, 941 P.2d 995, 1000 ("the issue of whether a proposed taking is [necessary] is a judicial question"). Second, an early determination of the taking issue has particular merit in the private condemnation context where the right to condemn depends on private rather than public necessity, and the time and expense associated with the commissioners' report may be avoided when that necessity is found lacking.

¶ 14 Although a private condemnation proceeding pursuant to 27 O.S.2001 § 6 will ultimately require the appointment of commissioners to determine the just compensation due for the property taken, we do not find that a trial court is required to wait until the commissioners' report is filed to determine whether the taking is necessary. When that taking decision is rendered, the aggrieved party is permitted by 66 O.S.2001 § 56 to appeal. We find that the Trial Court's order of September 7, 2006, is an appealable order over which this Court has jurisdiction.

## STANDARD OF REVIEW

■ ¶ 15 Again following the cases interpreting the railroad condemnation statutes, we determine that the necessity of the taking is a question of fact and that the "findings of the trial court on the issue of necessity of the taking will not be disturbed on appeal where there is evidence to support such findings." *B. Willis, C.P.A.,* 1997 OK 78 at ¶ 18, 941 P.2d at 1000.

## DISCUSSION

■ ¶ 16 The procedural issue raised by the parties concerns the standard of proof required to show that a taking for a private way of necessity is justified. The Ransoms, citing *Smith v. Bovaird Supply Co.,* 1980 OK 129, 616 P.2d 1157, argue for a higher level of proof and urge this Court to require proof of strict necessity rather than reasonable necessity.[3] We find the answer to that argument in *B. Willis, C.P.A.:* " 'Necessity' does not mean an absolute but only a reasonable necessity." 1997 OK 78 at ¶ 18, 941 P.2d at 1000. Consequently, with respect to condemnations pursuant to 27 O.S.2001 § 6, the condemnor is required to prove that the right-of-way is reasonably necessary.

---

3. In *Bovaird,* the Supreme Court held it was error for the trial court to permanently enjoin landlocked property owners from pursuing in the future an easement pursuant to 27 O.S.2001 § 6 but finding it unnecessary to determine "what rights are afforded to a 'landlocked' owner." *Id.* at n. 2, 616 P.2d 1157. The Court also noted without granting or withholding "precedent" that two opinions from the Court of Civil Appeals had addressed this issue: *Blankenship,* discussed *ante,* and *Franks v. Tyler,* 1974 OK CIV APP 55, 531 P.2d 1067. *Franks* vacated an injunction prohibiting landlocked property owners from trespassing on a private road providing the only access to their property because the trial court had mistakenly concluded that proof of common ownership was necessary. Although proof of common ownership is required to establish an implied common law easement, no such requirement is contained in section 6 which "is an expression of public policy against landlocking property and rendering it useless ... not dependent upon whether there was ever a common owner." *Id.* at ¶ 9, 531 P.2d at 1070.

¶17 The Ransoms also argue that necessity has not been shown by any standard because (1) the Klintworths and the Joneses bought the property knowing there was no access; and (2) they do not need the easement to access the property but only to improve its value and their profit when they sell. Based on the record before the Trial Court, there are only two possible access routes available to the Klintworths and the Joneses and the Ransom route has significant advantages to the alternative.

¶18 The focus of the dissent raises an important question, not as to the available evidentiary record on which the Trial Court was required to make its decision, but as to the defenses available to a defendant in a private condemnation proceeding conducted pursuant to 27 O.S.2001 § 6. This is not a common law condemnation by implication proceeding in which the landlocked property owner must prove that his title was derived from the owner of the property sought to be condemned.[4] Section 6 grants a separate, statutory right of condemnation to property owners, the power to condemn an access easement to landlocked property from a stranger to the landlocked owner's title. Further, in a common law easement by implication proceeding just compensation is not an issue because the consideration for the easement was exchanged at the time of the conveyance. *Cookson v. Duke*, 1952 OK 169, 243 P.2d 706. Those taking an easement of necessity pursuant to the statutory remedy are required to pay the owner of the condemned property just compensation (66 O.S.2001 § 51). Nonetheless, section 6 provides a remedy to the Klintworths and the Joneses that was not available to them at common law, but which is guaranteed to them pursuant to Article II, § 23 of the Oklahoma Constitution.[5]

¶19 Invoking the eminent domain power of this State, section 6 grants to individual Oklahomans the power to condemn a private access easement "in like manner as railroad companies." The obvious difference in the use of this power is that a private property owner may defend a State's eminent domain condemnation proceeding by proving that the taking is not for a public purpose or that the taking is not necessary.[6] Other than the public policy which disfavors landlocked property,[7] the taking of a "private way of necessity" is, by definition, for a private purpose. Consequently, the private purpose defense is not available in a private condemnation proceeding. This does not require, however, the imposition of common law defenses, such as estoppel and laches, in a private condemnation proceeding conducted pursuant to section 6. While those defenses are likely to be available in a common law condemnation action, the Klintworths and the Joneses pursue a statutory remedy. No additional defenses to those available in a railroad condemnation are provided in section 6. Therefore, the defense available to the Ransoms is to show that this taking is not "reasonably necessary." *B. Willis, C.P.A.*, 1997 OK 78 at ¶18, 941 P.2d at 1000. This they failed to do to the satisfaction of the Trial Court, and we find no error in that conclusion. The Trial Court found that the Klintworths and the Joneses were entitled to a

---

4. *See Franks, supra* at n. 3 in which the Supreme Court observed in that case that the trial court had mistakenly found that proof of common ownership was required to establish a private easement pursuant to section 6. That requirement, the Court held, only applied in a common law condemnation proceeding based on the principle that the seller of property to a landlocked property owner impliedly grants an access easement to the purchaser because the law disfavors landlocked property.

5. The dissent suggests that further development of the evidence is required to determine if an option exists to obtain access from the Corps of Engineers. A common law action for an easement by prescription is not available because there has been no use of Corps land as a means of access to this property. Further, the Corps of Engineers is not subject to the jurisdiction of the Trial Court absent a waiver of sovereign immunity, which does not appear in this record. *Camp Clearwater, Inc. v. Plock*, 52 N.J.Super. 583, 146 A.2d 527, 538 (1953). For the same reason, an action against the Corps for a common law easement by implication would not be available to the Klintworths and the Joneses.

6. *Bd. of County Comm'rs of Creek County v. Casteel*, 1974 OK 31, ¶¶13–14, 522 P.2d 608. 522 P.2d 608, 610.

7. *Franks*, 1974 OK CIV APP 55 at ¶9, 531 P.2d at 1070.

right-of-way by necessity, and we find that there is evidence to support that finding. Consequently, that finding "will not be disturbed on appeal." *Id.* This case will now proceed in the Trial Court for a determination of the amount the Klintworths and the Joneses must pay to the Ransoms as just compensation for this access easement.

## CONCLUSION

¶ 20 The order of the Trial Court denying the Ransoms' objection to this private condemnation of a right-of-way by necessity is an appealable order. There is evidence to support the finding of the Trial Court that the Klintworths and the Joneses are entitled to a right-of-way by necessity pursuant to 27 O.S.2001 § 6. Consequently, we affirm.

¶ 21 AFFIRMED.

WISEMAN, J., concurs, and RAPP, C.J., dissents.

RAPP, C.J., dissenting.

¶ 1 In my opinion, the evidence does not supply critical information necessary to establish that a judgment can be entered without regard to whether the Klintworths and the Joneses (Plaintiffs) have established a "necessity" for a private right-of-way across Ransoms' property. Moreover, I find that this insufficiency of evidence exists regardless of whether Plaintiffs are held to a showing of a "reasonable necessity" or some stricter standard.

¶ 2 The absent facts relate to the Mary Boone (Boone)-Corps of Engineers (COE) transaction in 1959, coupled with the fact that Boone had access to a public county road before that transaction. Boone "sold" all but a three-acre tract of her property to COE, apparently leaving the three acres landlocked. Clearly, the acreage "sold" was subject to condemnation. Moreover, if COE had condemned the purchased land, then the diminution in value to the remaining three acres would have been an issue because that tract then became landlocked, which is a result not viewed with favor in this State.

¶ 3 Thus, it would seem logical that, as a part of the original Boone–COE transaction, provision would have been made to either provide access to the landlocked three acres or to include in the consideration paid by COE compensation for the now landlocked three acres. Moreover, it seems equally logical that Plaintiffs, especially the Klintworths who transacted with Boone, would have or should have informed themselves of these facts. Thus, knowledge of the facts about the Boone–COE transaction is a prerequisite to a decision that taking the Ransoms' land for a right-of-way is necessary.

¶ 4 It is possible that neither Boone nor COE did anything about the access issue in connection with the Boone–COE transaction thereby allowing the access road to flood. Such failure would, in my view, constitute negligence. Moreover, if Plaintiffs took no action to ascertain the pertinent facts of the Boone–COE transaction, this, too, would be negligence. If inaction by either Boone or Plaintiffs is the scenario, then such requires a legal determination, initially by the trial court, as to how this negligence affects (including estoppel) Plaintiffs in their quest to obtain access over the Ransoms' property.

¶ 5 In summary, I would hold that the trial court needs additional evidence relating to the Boone–COE transaction, as well as to Plaintiffs' knowledge thereof, in order to decide whether the taking of a right-of-way here is reasonable. Therefore, I would reverse the judgment and remand for an additional evidentiary hearing to address these issues, including the action taken to obtain access from COE.